**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID MULLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 1258 |
| v. ) | |
| ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting ) | Susan E. Cox |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

Plaintiff David Mullins ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Defendant," or the "Commissioner") denying his application for disability benefits. Before the Court is Plaintiff's motion for judgment on the pleadings [dkt. 12]. For the following reasons, Plaintiff's motion is GRANTED and the Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

## STATEMENT

On July 16, 2012, Plaintiff filed a claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), alleging disability beginning May 31, 2008, due to impairments arising from degenerative disc disease, spinal fusion, nerve damage, and hand problems. (R. 194, 214.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 14, 2014. (R. 29-93.) On April 24, 2014, the ALJ denied Plaintiff's claim, finding him not disabled under the Act. (R. 10-28.) The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the

Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Plaintiff was born on December 6, 1952, and was sixty-one years old at the time of his hearing. (R. 22, 194.) He has a high school education and worked for over thirty years as an auto mechanic and as a labor union business agent. (R. 230.) Plaintiff's medical history includes several back surgeries, the most recent of which was a spinal fusion surgery in 2007. (R. 768.) Plaintiff has also had a series of hand surgeries, including carpal tunnel release surgery, surgery to repair his left pinky finger following an accident in 2008, trigger finger release surgeries for his right index and ring fingers in 2009, and trigger finger release surgery for his left index and ring fingers in 2010. (R. 541, 634-639, 677-678, 850, 870-871.) In May 2011, he reported left shoulder pain, which was treated with an injection. (R. 816.) In December 2012 and January 2013, he underwent a course of occupational therapy to treat bilateral hand pain. (R. 1299, 1324-1331.) In June 2013, he reported continuing bilateral hand pain and numbness, particularly in the thumb and index finger, which was worse with stretching and reaching. (R. 1439.) In 2013, he also had neck pain which was treated with physical therapy, and shoulder pain which was treated with injections. (R. 1439, 1476, 1504, 1513.) Plaintiff has also suffered other ailments which are not germane to this opinion.

Two of his treating physicians, spinal surgeon Dr. Ghanayem and primary care physician Keith E. Vesilek, M.D., each submitted "Residual Functional Capacity Questionnaires" completed in August of 2012 and November of 2013 respectively; these documents were substantively identical, and both doctors opined that Plaintiff's lumbar impairments imposed severe functional restrictions on Plaintiff. (R. 1195-96, 1558-59.) For example, the doctors shared the opinion that Plaintiff could sit for no more than five minutes at a time for a total of

less than an hour in a workday, that he could stand for no more than five minutes at a time for a total of less than one hour in a workday, and that he could never lift ten pounds. (*Id.*) Both also averred he had "limitations in doing repetitive reaching, handling or fingering," but neither explained whether it was his hands, fingers or arms that led to that conclusion or indicated what percentage of a workday he could safely reach, grasp, or engage in fine manipulation. (R. 1159, 1196.)

In September 2012, state agency reviewer Richard Bilinsky, M.D., reviewed Plaintiff's medical file and opined that he could stand or walk for about six hours and sit for about six hours in an eight-hour workday, and that he could occasionally lift twenty pounds and frequently lift ten pounds. (R. 100.) He found that Plaintiff's back pain would cause some postural limitations, but noted no manipulative limitations. (R. 100-101.) On March 4, 2013, a second reviewing physician, James Hinchen, M.D., reviewed Plaintiff's file again, including treatment records updated through February 22, 2013, and affirmed Dr. Bilinsky's findings. (R. 107-108, 115-117.)

Medical expert Sai R. Nimmagadda, M.D., reviewed Plaintiff's medical record and testified at the hearing before the ALJ on March 14, 2014. (R. 29, 69-79.) He identified as severe impairments Plaintiff's degenerative lumbar disc disease, degenerative cervical disc disease, bilateral carpal tunnel syndrome, ulcerative colitis, and chronic cholecystitis (inflammation of the gallbladder) or cholangitis (inflammation of a bile duct or ducts). Dr. Nimmagadda also stated that Plaintiff has shoulder pain that "is going to flare off and on, intermittently, depending on the use and extent," but can be controlled with medications and physical therapy. (R. 72-73.)

Dr. Nimmagadda opined that Plaintiff was restricted to lifting ten pounds occasionally or frequently, and was able to stand for less than two hours and sit for about six hours in an eight-hour workday, periodically alternating between sitting and standing every 30 to 60 minutes. (R.

73.) As to Plaintiff's upper extremities, Dr. Nimmagadda opined that he was limited to occasional overhead use of his right arm due to shoulder pain, and that he was limited to only occasional fine manipulation with either hand because of his history of carpal tunnel syndrome and trigger fingers. (R. 73-74.) The medical expert testified that his assessment was based on the evidence in the file, on the two treating physicians' opinions, and on Plaintiff's long history of back pain and treatment. (R. 75.) Upon questioning, he clarified that the full range of limitations dated back to June 2012, when Plaintiff first began reporting neuropathic pain and intensifying his treatments. He then acknowledged that it is "hard to put a specific time point" on when that pain began or to quantify Plaintiff's sit/stand restrictions between 2008 and 2012. (R. 76, 79.) Dr. Nimmagadda further testified that Plaintiff's fingering limitations dated all the way back to the alleged onset date in 2008, because of Plaintiff's history of carpal tunnel surgery. (R. 78-79.)

At the hearing, the ALJ asked Vocational Expert Thomas F. Dunleavy (the "VE") to assume an individual of Plaintiff's past age, education, and work experience, who retained the residual functional capacity to perform light work except that he could only occasionally balance, stoop, crouch, crawl, climb ramps and stairs; could never climb ladders ropes or scaffolds; and could never work around hazards or in loud noise environments or be exposed to concentrated amounts of vibration. (R. 85-86.) The VE opined that such a person would be able to perform his past work as a union business agent as described in the DOT and as generally performed. (R. 86.) Given Plaintiff's transferrable skills, such a person could also perform the jobs of car sales and auto parts sales. (R. 90-91.) In a second hypothetical, the ALJ asked the VE to consider that the person had several additional limitations, including a sit/stand limitation and the following upper-extremity limitations: no more than occasional reaching overhead with the right hand and no more than occasional fine fingering bilaterally. (*Id.*) A discussion that ensued

4

focused mainly on the nature and impacts of the sit/stand limitation, with the VE ultimately concluding that the second hypothetical person would not be able to perform Plaintiff's past work. (R. 87-89.)

The ALJ issued a written decision on April 24, 2014, following the five-step analytical process required by 20 C.F.R. § 416.920. As a preliminary matter, the ALJ found that Plaintiff last met the insured status requirements for DIB eligibility on December 31, 2013. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of May 31, 2008. At step two, the ALJ concluded that Plaintiff had severe impairments of obesity, degenerative disc disease of the lumbar spine, post laminectomy syndrome, status post fusion, mild thoracic degenerative disc disease and thoracic disc bulge, degenerative disc disease of the cervical spine, history of carpal tunnel syndrome and bilateral trigger finger surgeries. (R. 12.) She also found that Plaintiff had the non-severe impairments of hypertension, GERD, history of ulcerative colitis, left shoulder pain, early degenerative joint disease in his right knee, and tinnitus. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. The ALJ then determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work, except that he may only occasionally balance, stoop, crouch, crawl and climb ramps and stairs; he is never to climb ladders ropes or scaffolds; he can never work around hazards such as unprotected heights and dangerous moving machinery; he is never to work in loud noise environments; he is never to perform work involving exposure to concentrated amounts of vibrations. (R. 15.)

At step four, the ALJ concluded that, through his date last insured, Plaintiff was capable of performing his past relevant work as a labor union business agent. (R. 21.) At step five, the

ALJ then made the alternative finding that, based on Plaintiff's age, education, transferrable work skills, and residual functional capacity, there were other jobs in the national economy that Plaintiff could perform, including auto sales and auto parts sales. (R. 21-22.) These findings led to the conclusion that Plaintiff was not disabled, as defined by the Act, from his alleged onset date through his date last insured. (R. 22.)

## DISCUSSION

### I. Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits, "he must build an accurate and logical bridge from the evidence to his

6

conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). "An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning." *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

## II. The ALJ's RFC Assessment Failed to Account for Plaintiff's Hand Impairments

In step two of her evaluation, the ALJ found the Plaintiff's history of carpal tunnel and bilateral trigger finger surgery to be "severe impairments," which by regulation means that those impairments "significantly limit [his] ability to perform basic work activities." (R. 17); *Moore v. Colvin,* 743 F.3d 1118, 1121 (7th Cir. 2014); *see* 20 C.F.R. § 404.1520(c). Where an ALJ finds that a claimant has a hand impairment, she may find that person limited to either "occasional" or "frequent" use of the hands for some actions at work. *See, e.g., Marteau v. Colvin,* No. 12 C 4058, 2015 WL 639266 at *2 (N.D. Ill. Feb. 13, 2015) (ALJ found claimant with ulnar palsy of the left hand could "occasionally perform find manipulation with his left hand"); *Cabrera v. Astrue,* No. 10 C 4715, 2011 WL 1526734 at *9 (N.D. Ill. Apr. 20, 2011) (Claimant with status post carpal tunnel surgery and cubital tunnel syndrome retained RFC for "frequent but not constant handling and fingering."). Social Security Regulations define a limitation of "occasional" as occurring no more than one-third and "frequent" as occurring from one-third to two-thirds of a normal workday. SSR 83-10, 1983 WL 31251 at *5-6. Here, the ALJ has imposed no limit at all on Plaintiff's use of his hands, meaning that she found him capable of up to c*onstant* reaching, handling, or fingering over an eight-hour workday, outside of regular breaks. She has not adequately explained how Plaintiff's hand impairments could "significantly

7

limit" his work abilities in her step two finding and, at the same time, have no impact on his capacity for work in her RFC finding.

Both of Plaintiff's treating physicians found he would have some upper extremity limitations, though they did not quantify what those might be. (R. 1159, 1196.) Testifying medical expert Dr. Nimmagadda opined that Plaintiff's hand restrictions limited him to occasional fingering as far back as his alleged onset date in 2008, and that shoulder pain later limited him to only occasional overhead reaching with his right hand. (R. 73-74, 78-79.) Only the state agency reviewing physicians opined that Plaintiff would have no work-related limitations in manipulation. (R. 101, 115-117.)

The ALJ's reasons for entirely rejecting Dr. Nimmagadda's assessment of Plaintiff's upper extremity limitations do not bear scrutiny. First, she states "the treatment record supports improvement with surgery [and] reflects intermittent problems from hand to hand that come and go." (R. 20.) In this vein, the Commissioner points out that the ALJ "discussed" the evidence of Plaintiff's arm, hand, and finger problems. [dkt. 23 at 12, citing R. 16-17.] However, recitation of a claimant's medical history is not the same as analysis, and the ALJ did not explain how hand symptoms that "come and go," even after surgery, are consistent with an ability to use one's hands frequently or even constantly at work. The ALJ also finds that Plaintiff's "activities with his car are contrary to significant limitations with his hands." (R. 20.) It may be true that *significant* limitations are not warranted, but the ALJ has here assessed an RFC that lacks any hand limitations at all. (R. 20.) The ALJ has not built a "logical bridge" from the medical evidence of Plaintiff's numerous hand ailments to such an extreme conclusion. *See Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008.)

### III. The ALJ's Questioning of the Vocational Expert Was Flawed.

8

Because the ALJ has failed to adequately support the lack of any hand or arm restrictions in her RFC assessment, her questioning of the VE is also flawed. In order for the testimony of a VE to be helpful in discerning whether there are jobs a claimant can perform, the ALJ must direct the VE to the totality of the claimant's limitations. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010). Here, in questioning the VE on the basis of her flawed RFC finding, the ALJ failed to elicit testimony indicating that Plaintiff can perform his past job, or, alternately, that there are jobs in the economy that he can perform. A second hypothetical question posed by the ALJ did include some restrictions in reaching and fingering; however, those restrictions were included in a list of restrictions that included a need to change positions between sitting and standing every 30 minutes. The VE ultimately opined that there would be no jobs available for someone of Plaintiff's age and vocational profile given those cumulative restrictions. The ALJ did not pose any hypotheticals that included upper extremities limitations in the absence of the sit/stand restriction, leaving no evidence on record to explain whether an individual with any upper extremities restrictions can perform the Plaintiff's past work or the other jobs the ALJ has found are available to him. *Compare White v. Astrue,* No. 11 C 8368, 2012 WL 5995743 at *2 (N.D. Ill. Nov. 29, 2012) (VE testimony showed that "[e]ven if [claimant] were limited to only occasional (as opposed to frequent) fingering, handling, and feeling," jobs were still available.)

Plaintiff also contends that the ALJ's assessment of his lifting and sit/stand restrictions are erroneous. Because this case must be remanded to address the extent Plaintiff's impairments in his upper extremities and to remedy the step four and five findings accordingly, the Court forms no opinion on the ALJ's analysis of his exertional or postural limitations at this time.

## IV. Subjective Symptom Evaluation

Plaintiff also alleges that the ALJ erred in discounting his credibility while evaluating the intensity and persistence of his symptoms. The Social Security Administration (the "Administration") has recently clarified its sub-regulatory policies about symptom evaluation, eliminating the term "credibility" to emphasize that "subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1 (effective March 28, 2016). This case requires remand to correct the above-discussed errors in the evaluation of Plaintiff's RFC. However, on remand, the ALJ should also take the opportunity to re-evaluate the intensity and persistence of Claimant's symptoms in light of the Administration's recent guidance.

## CONCLUSION

For the foregoing reasons, this decision of the ALJ is reversed and remanded for proceedings consistent with this opinion.

**ENTER:**

**DATED:** May 17, 2016

_____

Susan E. Cox
United States Magistrate Judge